NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0361n.06

Case No. 16-2206

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 22, 2017
DEBORAH S. HUNT, Clerk

|                                          |   |                                                                                            |
|------------------------------------------|---|--------------------------------------------------------------------------------------------|
| SUZETTE WOOD, et al.,                    | ) |                                                                                            |
|                                          | ) |                                                                                            |
|    Plaintiffs-Appellants, | ) |                                                                                            |
|                                          | ) | ON APPEAL FROM THE UNITED                                                                  |
| v.                                       | ) | STATES DISTRICT COURT FOR                                                                   |
|                                          | ) | THE EASTERN DISTRICT OF                                                                     |
| MIDLAND FUNDING, LLC, et al.,            | ) | MICHIGAN                                                                                    |
|                                          | ) |                                                                                            |
|    Defendants-Appellees.  | ) |                                                                                            |

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge. Plaintiffs are consumer debtors, while Defendant Midland Funding, LLC and Defendant Weltman, Weinberg & Reis, Co., LPA operate businesses that involve, among other things, consumer-related debt. Plaintiffs appeal from the district court's grant of Defendants' motion to dismiss on grounds of failure to state a claim and lack of subject-matter jurisdiction. Plaintiffs argue that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") by fraudulently procuring alternative-service orders that enabled them to enlist a newspaper to publish notice of Plaintiffs' consumer debt. The district court dismissed the case on the bases of *Rooker-Feldman* abstention and Federal Rule of Civil Procedure 12(b)(6). Although we conclude that the district court erred in its application of *Rooker-Feldman* abstention, we **affirm** the judgment because Defendants did not make false or misleading statements or engage in harassing conduct actionable under the FDCPA.

I

Michigan Court Rules provide litigants with two methods to serve individuals:

(A) Individuals.  Process may be served on a resident or nonresident individual by,

(1) delivering a summons and a copy of the complaint to the defendant personally; or

(2) sending a summons and a copy of the complaint by registered or certified mail, return receipt requested, and delivery restricted to the addressee.  Service is made when the defendant acknowledges receipt of the mail.  A copy of the return receipt signed by the defendant must be attached to proof showing service under subrule (A)(2).

MCR 2.105(A).  Litigants can request an alternative means to serve individuals:

On a showing that service of process cannot reasonably be made as provided by this rule, the court may by order permit service of process to be made in any other manner reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard.

MCR 2.105(I).  The Supreme Court of Michigan has not addressed whether an attempt at service must be made under both subsections of MCR 2.105(A) before invoking MCR 2.105(I).  At all relevant times, judicial interpretation was reticent on the interplay between MCR 2.105(A) and MCR 2.105(I).

In 2015, Defendants initiated legal proceedings to collect consumer debt allegedly attributable to Plaintiffs.  After Defendants failed to personally serve Plaintiffs with notices of consumer debt, the state court gave Defendants permission to publish notices of action as an alternative means of service upon Defendants' motion and verification that service on Plaintiffs could not be made as otherwise allowed under state procedure.  Defendants recommended certain language to provide notice of the legal proceedings, which the state court adopted in its orders approving service through publication.  Plaintiffs posit that the representations to secure

the orders for alternative service were false because Defendants attempted personal service only, neglecting the MCR 2.105(I) provision of also attempting service through registered or certified mail.

In accordance with the state-court orders, Defendants used local newspapers to publish notices of action, which identified Plaintiffs as consumer debtors. With the exception of one individual, the notices ran for three consecutive weeks. The newspapers printed verbatim the court orders, revealing Plaintiffs' names and addresses as well as the dollar amounts owed, original creditors, and current debt holders. An example of the notices of action follows: "To: Suzette Wood IT IS ORDERED: You are being sued in this court by the plaintiff for monies due to Chase Card Member Services for the amount over $3,012.06."

In response to the newspaper publications, Plaintiffs filed this lawsuit, alleging three counts: (1) false statements made in connection with collection of debt under 15 U.S.C. § 1692e; (2) publication of debt as a form of harassment under § 1692d; and (3) false return under Michigan common law. Defendants moved to dismiss on grounds of failure to state a claim, res judicata, collateral estoppel, and *Rooker-Feldman* abstention. In 2016, a magistrate judge recommended granting in part and denying in part. *Wood v. Midland Funding, Co., LLC*, No. 15-cv-14204, 2016 U.S. Dist. LEXIS 98070, at *22 (E.D. Mich. June 15, 2016). The district court rejected the report and recommendation, dismissing with prejudice counts one and two, while dismissing count three without prejudice. *Wood v. Midland Funding Co. LLC*, No. 15-cv-14204, 2016 U.S. Dist. LEXIS 97857, at *14–16 (E.D. Mich. July 27, 2016). The district court dismissed count one on the basis of *Rooker-Feldman* abstention and count two for failure to state a claim.

No. 16-2206, *Wood, et al. v. Midland Funding, LLC, et al.*

## II

We review de novo a grant of a motion to dismiss for lack of subject-matter jurisdiction. *McCormick v. Braverman*, 451 F.3d 382, 389 (6th Cir. 2006); Fed. R. Civ. P. 12(b)(1). When the district court goes beyond the complaint and addresses the factual predicates for jurisdiction, the decision resolves a "factual" challenge rather than a "facial" challenge; we review for clear error any findings on factual challenges. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133–35 (6th Cir. 1996). Although the jurisdictional question here implicates representations made during state-court proceedings, the district court did not resolve factual disputes to which deference is owed. *See Howard v. Whitbeck*, 382 F.3d 633, 636–37 (6th Cir. 2004).

We review de novo a grant of a motion to dismiss for failure to state a claim. *See Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013); Fed. R. Civ. P. 12(b)(6). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating a motion to dismiss, courts review the complaint and any documents attached to the complaint or the motion to dismiss if they are referred to in the complaint and are central to the claims. *See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

## III

Plaintiffs appeal the judgment on counts one and two, and we address the district court's grounds for dismissal accordingly.

A

The district court dismissed count one under *Rooker-Feldman* abstention. Under count one, Plaintiffs assert that Defendants made false or misleading representations in their motions for alternative service. Plaintiffs argue that *Rooker-Feldman* abstention does not apply because whether Defendants made a false or misleading representation is an element of the cause of action and not part of the jurisdictional inquiry. Plaintiffs press that a statutory violation occurred at the time Defendants moved for alternative service, well before the state court took action. Were Plaintiffs to win this lawsuit, they continue, the orders for alternative service and publication would not be overturned. We agree that *Rooker-Feldman* abstention does not apply.

"The threshold question in every federal case is whether the court has the judicial power to entertain the suit." *Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Under *Rooker-Feldman* abstention, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 476–82 (1983)).

"A court cannot determine the source of the injury 'without reference to the plaintiff's request for relief.'" *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012) (citation omitted). A federal court lacks subject-matter jurisdiction when the cause of the alleged injury is the state judgment itself. *McCormick*, 451 F.3d at 393 (citation omitted). "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Lawrence v. Welch*, 531 F.3d 364, 368–69 (6th Cir. 2008) (citation omitted).

We conclude that the state-court orders for alternative service are not the source of Plaintiffs' injuries. Plaintiffs do not seek redress from the state-court orders because the complaint rests on the commission of acts leading to the eventual state-court orders. An allegation of unlawfully creating a tainted state-court order is not the same as challenging that order. Plaintiffs seek redress for actions complete at inception, before any review by the state court. The district court declined to take Plaintiffs' case as presented, resisting the gravamen of claims premised on prefatory acts antedating the state-court orders. That the claims may "deny a legal conclusion of the state court" does not divest federal courts of authority to determine the case. *See McCormick*, 451 F.3d at 392. Plaintiffs do not seek to have the orders vacated; instead, they seek "[i]njunctive relief prohibiting Defendants [from] using alternative service of process by publication in the State of Michigan in cases requiring personal jurisdiction, or as otherwise fashioned by the court to avoid future violation of the FDCPA." This type of forward-looking relief does not implicate *Rooker-Feldman*. *See Berry*, 688 F.3d at 300 ("However, Fieger's challenge to 'Michigan's recusal rule as applied in future cases' was not barred because it was independent of the state court judgment and forward-looking." (citing *Fieger v. Ferry*, 471 F.3d 637, 646 (6th Cir. 2006)).

B

Although the district court misapplied *Rooker-Feldman* abstention to dismiss count one, that conclusion does not preclude review of alternative grounds for dismissal. *See Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 428–29 (6th Cir. 2016) ("For the aforementioned reasons, we affirm the district court's dismissal of Haines' APA claim on a ground supported by the record but not stated by the district court: Haines' failure to state a claim on which relief may be granted."). Plaintiffs respond that plausible facts support counts one and two.

As for count one, Plaintiffs contend that Defendants made material misrepresentations in violation of 15 U.S.C. § 1692e by representing that they satisfied their burden in obtaining alternative service. Defendants misled the state court, say Plaintiffs, by asserting that they could not effectuate service even though they did not attempt registered or certified mail. Plaintiffs iterate that the process-server verifications and the factual findings of what those verifications represented are not disputed. Rather, the dispute rests on the effects of those verifications on the state court's legal analysis. Plaintiffs argue that the statements in Defendants' certified motions are objectively false—even if the state court did not recognize the statements as false—and are directed to debt collection. The false statements, Plaintiffs continue, unlawfully embolden efforts to collect debt from unsophisticated consumers willing to forgo challenging those defaults upon reliance of the false statements. According to Plaintiffs, unlike attorneys generally, debt-collector attorneys must comply at all times with the FDCPA and cannot advance positions because they are arguable or in their client's pecuniary interest.

As for count two, Plaintiffs assert that they pleaded with specificity that Defendants published their names as private debtors in local newspapers, which shamed Plaintiffs and violated 15 U.S.C. § 1692d. According to Plaintiffs, Defendants were more than mere messengers of debt-collection activities—they prepared the submissions for publication and undertook actions to force the repayment of debt. Plaintiffs believe that, if discovery is permitted, evidence will show that Defendants could have published notices of action without revealing that Plaintiffs were being sued for collection of debts. Plaintiffs point to attorney correspondence that, in their view, admits in effect that Defendants understood that publishing the details of Plaintiffs' alleged indebtedness would violate the FDCPA.

Defendants counter that the motions for alternative service were not false and that compliance with the state-court orders did not constitute actionable harassment. Defendants maintain that their verification statements were accurate that "diligent attempts have been made to personally serve process on the defendant." The affirmation that "[s]ervice of process . . . cannot reasonably be made as otherwise provided in MCR 2.105," say Defendants, is also neither false nor misleading. Defendants further assert that complying with those orders is not harassing or abusive under the FDCPA. The representations, Defendants contend, merely informed the debtors of their financial obligations.

We conclude that Plaintiffs fail to state a claim upon which relief can be granted. Congress enacted the FDCPA to eliminate abusive debt-collection practices by preventing debt collectors, including attorneys, from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA also precludes debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." *Id.* § 1692d. "[T]he FDCPA protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014).

Defendants did not make false or misleading statements actionable under § 1692e. Stripping away the conclusory allegations and legal conclusions within the complaint simplifies the case to whether count one can be sustained on assertions that Defendants' actions failed to comport with Plaintiffs' understanding of Michigan law. *See Iqbal*, 556 U.S. at 678 (observing that courts are not required to accept conclusory statements as true); *Ctr. for Bio-Ethical Reform,*

*Inc. v. Napolitano*, 648 F.3d 365, 377 (6th Cir. 2011) (concluding that "vague and conclusory allegations of nefarious intent" are insufficient to state a claim). The allegations describe the actionable conduct as representations that attempts at personal service failed and that alternative service was necessary because reasonable efforts to effectuate service were unavailing. Plaintiffs fail to cite judicial interpretation or authoritative guidance on the intersection between MCR 2.105(A) and (I) at the time Defendants filed the alternative-service motions. Plaintiffs therefore cannot establish whether Defendants had to attempt personal service as well as either certified mail or registered mail before seeking a court order to sanction alternative service.[1] Even taking as correct Plaintiffs' understanding of MCR 2.105, Defendants could not have been on notice of that prescient understanding.

Defendants provided truthful information about the failed attempts at personal service and requested judicial assistance under a fair reading of MCR 2.105. The state court, reviewing that same statute, reached the same conclusion about the requisite showing under MCR 2.105 and approbated an alternative means to effectuate service. Without extant guidance on how to seek alternative service at the time, Plaintiffs fail to persuade that Defendants omitted information to lead the state court astray. Although Plaintiffs resist characterizing the lawsuit as correcting the state court's decision, such position, if pursued, would run headlong into *Rooker-Feldman* abstention. Plaintiffs are left to press their interpretation of Michigan law, alleging misrepresentations for failing to conform to a preferred interpretation of the law. That is neither false nor misleading as alleged; it is a disagreement among private parties about a legal nuance that courts had not resolved at the time. To the extent Plaintiffs suggest that Defendants knew

---

[1]At oral argument, Plaintiffs went no further than to represent that—since Defendants' conduct—only the 82nd District Court has interpreted MCR 2.105 consistent with their position. Without citation or addendum as evidence, Plaintiffs also alluded that Michigan's Institute of Continuing Legal Education provided a similar recommendation for attorney conduct. But, as Plaintiffs conceded, ICLE is not binding authority.

that extra efforts could have been made or that their conduct could result in litigation, risk tolerance is not synonymous with deception.

In addition, Defendants' compliance with the state-court orders by itself is not cognizable as harassing or abusive conduct under § 1692d. While the FDCPA references "publication of a list of consumers who allegedly refuse to pay debts," we have never sanctioned as actionable compliance with a court order to obtain service. *See* 15 U.S.C. § 1692d(3). Although the question of "whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury, . . . Congress has indicated its desire for the courts to structure the confines of § 1692d." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (citing *Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir. 1985)). And courts have dismissed § 1692d claims as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor. *See, e.g.*, *Jeter*, 760 F.2d at 1179 (affirming summary judgment because the notice did not create a "tone of intimidation" actionable under the FDCPA).

Defendants used the court system to secure a means for facilitating the collection of defaulted debt, general conduct for which we have hesitated before extending liability. *See Harvey*, 453 F.3d at 330–31 ("*Any* attempt to collect a defaulted debt will be unwanted by a debtor, but employing the court system in the way alleged by Harvey cannot be said to be an abusive tactic under the FDCPA."). Although Defendants proposed language for the orders with fulsome detail, such details could benefit rather than harass those upon whom notice could not have been perfected. *Cf. Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 224 (2d Cir. 2012) (holding that due process requires sufficient notice so as "to apprise interested parties of the pendency of the action" (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). The facts in the 14-page amended complaint stop at allegations that newspapers published the

debt. Although Plaintiffs suggest that less information could have been used (or that some courts have ordered publication of less facts), they fail to cite caselaw in support of the notion that publication of unexpurgated debt information in accordance with a court order is a per se violation of the FDCPA.

**AFFIRMED.**